**BELDEN, Plaintiff-Appellee, v. MODERN FINANCE COMPANY, Defendant-Appellant.**

Ohio Appeals, Second District, Greene County.

No. 485.   Decided June 12, 1945.

Dan M. Aultman, Xenia, L. T. Marshall, Xenia, for plaintiff-appellee.

Vorys, Sater, Seymour & Pease, Columbus, Miller & Finney, Xenia, for defendant-appellant.

## OPINION

By MILLER, J.

This is an appeal on questions of law and fact from the Court of Common Pleas of Greene County, Ohio. The plaintiff filed his petition in which he sought a receiver for the defendant and an injunction against its carrying on business in Xenia, Ohio. On motion of the plaintiff a receiver was appointed for a term of ninety days, and an injunction against the defendant operating its business was granted for the same period. The defendant filed a motion to strike the petition from the files for failure to state a cause of action, which was overruled.

The error assigned is that the Court erred in overruling this motion to strike the petition from the files.

The matter was argued before this Court on the theory that the motion was a general demurrer, and the Court's attention was directed solely to the question of whether or not the petition stated a cause of action.

The allegations of the petition, which included a copy of the contract and the defendant's letter notifying plaintiff that it was terminating the contract, merit detailed exposition.

The contract provided:

"WHEREAS, said Party of the Second Part is desirous of acting as agent for said Party of the First Part in carrying on its said business in said County;

"NOW, THEREFORE, in consideration of the mutual covenants hereinafter contained, the Parties do hereby agree together as follows, to wit:

"1. That said Party of the First Part does hereby appoint said Party of the Second Part as its agent in and about the management of its loan and discount business in said Greene County, Ohio, * * *."

"17. Said Party of the First Part may, at any time, refuse to permit the Party of the Second Part to make further loans or purchase further discounts under this Agreement, upon giving said Party of the Second Part three months' written notice. Said Party of the Second Part may, at any time, upon giving said Party of the First Part three months' written notice, refuse to make further loans or purchase further discounts for and in the name of said Party of the First Part.

"If, for any reason, said Party of the Second Part should refuse to make, or said Party of the First Part should refuse to permit said Party of the Second Part to make any further

loans, or purchase and further discounts, under this Agreement, then said Party of the Second Part shall be obligated to collect all outstanding loans so made and discounts so purchased in the name of said Party of the First Part in a business like and orderly manner. In such event, said Party of the Second Part shall deposit all money so collected in said bank account and shall draw no checks thereon. **Said Party of the First Part may, however, in such event, at its option, take over the liquidation of any and all loans made and discounts theretofore purchased.**

"In the event said Party of the Second Part should die, or * * * be unable to perform to the satisfaction of said Party of the First Part his duties under this Agreement, then said Party of the First Part may, at its option, cancel this Agreement, and take over the liquidation of said accounts, and all records pertaining thereto. In such event, a sum equal to one-half of the fee he would be entitled to if he liquidated said accounts in full, provided the liquidation did not exceed eighteen (18) months, shall be paid by said Party of the First Part to said Party of the Second Part.

"In the event said Party of the First Part should see fit to terminate this Agreement, in accordance with the terms hereinbefore provided, **and decides to sell said accounts receivable in one lot,** said Party of the First Part hereby agrees to give said Party of the Second Part, the first right and opportunity to buy in said accounts.

"In the event said Parties of the First and Second Parts cannot agree upon terms for sale and purchase of said accounts, and said Party of the First Part sells same to some third party, and obtains therefor a figure over and above the unpaid principal balance plus accrued interest thereon, figured as of the date of the consummation of the sale, said Party of the First Part hereby agrees, upon the consummation of the sale, to pay said Party of the Second Part, one-half of said bonus which it might receive from the sale of the accounts.

"If, however, said Party of the Second Part should purchase the accounts, he will likewise obtain credit for one-half of the agreed bonus figure.

"19. Said Party of the Second Part will begin carrying on business for and on behalf of the said Party of the First Part in accordance with the terms of this Agreement, * * *." (all emphasis ours.)

The "Party of the First Part" referred to in this agreement is the defendant, and the plaintiff is referred to as "Party of the Second Part".

The contract further provided that the defendant was to deposit in a bank the money for the business which plaintiff might draw for the purpose of the contract. Plaintiff was to make in the name of the defendant personal loans in Greene County on certain detailed conditions. The defendant might disapprove of any loan, in which case the plaintiff would be compelled to buy the paper back without recourse against the defendant.

Provisions were also made for the purchase of discount paper, but no such purchases were ever made, so this matter is not in issue. The plaintiff was also to be permitted to invest his own funds in discount paper if he so chose. All communication, filing and legal expenses in connection with the business and all charges-off or losses on loans or discounts belonging to the defendant were to be borne by the defendant. The plaintiff was to provide a suitable office to transact the business of his employees and insure all money collected by him. The defendant was to pay for liability insurance on the office and automobile used by plaintiff in the operation of the business. Plaintiff was to furnish defendant a fidelity bond, defendant paying the premium and approving the bonding company. The defendant was to secure and maintain in force the license to be granted by the State of Ohio, permitting it to engage in the small loan business in the county. The plaintiff was to surrender his license in order that the defendant could secure one for Greene County, since otherwise the State would not grant a license to the defendant. The plaintiff's compensation for the making of loans was to be one-third of the interest collected by him on principal amounts up to $300.00. The plaintiff was to keep regular book accounts and office records for the defendant's inspection at any reasonable time. The plaintiff was to make daily and monthly reports to defendant on its forms giving detailed information on defendant's loans, and was to turn over to defendant with these reports the original notes and mortgages involved.

We have gone into the contract at considerable length for the rights of these parties must be measured by it.

In his petition the plaintiff admits that on January 2, 1945, he was notified in writing that defendant was terminating the contract and was taking over the liquidation of the accounts, but he claims a breach of contract and that on or about January 1, 1945, the defendant opened an office in Xenia, Ohio, for the operation of business, notified the Clerk of Courts to refuse to file or release any papers with the plaintiff's signature or any of the plaintiff's employees' signatures

thereon, notified the Xenia National Bank of Xenia as of January 2, 1945, to refuse to accept any checks that would come to the bank with the plaintiff's signature, and written notice to customers of said plaintiff, advising them that the plaintiff was no longer authorized to receive payments on accounts held by him at his office, published in the Xenia Gazette, and notice to the effect that payments should be made to the defendant's agent, Mr. Craig, at their office in the Steele Building, Xenia, Ohio, and advertised for new business.

The jurisdiction to appoint receivers is conferred by §11894 GC, which provides that a receiver may be appointed:

"1. In an action by * * * a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed or materially injured; * * *.

* * * * *

"6. In all other cases in which receivers heretofore have been appointed by the usages of equity."

A careful consideration of the contract, we think, shows that it is simply a contract of agency terminable at the will of either of the parties.

Agency has ben defined in I O Jur 614 as:

"An agency has been defined as a contract, express or implied, by which one of the parties confided to the other the management of some business to be transacted in his name, or on his account, by which that other assumes to do the business and to render an account of it."

An agency is created for contractual dealings by the agent with third persons, and the agent's authority is derived from the power granted him by the principal in the contract. His methods of operation are closely controlled and he is held to strict accounting procedures. The contract expressly states that plaintiff desires to act as "agent" for defendant in carrying on defendant's business in Greene County. By the contract defendant appoints plaintiff as its "agent" and plaintiff promises to "begin carrying on business for and on behalf of" defendant. The defendant was to provide the money

for plaintiff to make its loans and checks were to be drawn only in the name of the defendant and only for the purposes of the contract. Plaintiff was restricted in the type of loans that he could make and all loans were subject to the approval of the defendant. Any interest which the plaintiff might have had in this business was severed at the time it was sold to the defendant as consideration for the contract. The plaintiff gave up his license to engage in the small loan business, which is essential to any ownership in such business.

A careful reading of the contract as a whole discloses that the plaintiff has no interest in the accounts or business of the defendant, for not only is the defendant's money used in making the loans and purchasing discounts, but the notes are payable to the defendant and at no place is it alleged that there is any title in the notes in the plaintiff. Any loss which might be suffered because of the failure to collect in full any of the accounts was to be borne by the defendant.

From all these facts we conclude that the relationship between these parties is that of principal and agent and not a partnership. It is the contention, however, of the plaintiff, that as agent he has acquired some interest in his principal's business. This claim is made under paragraph 17 of the contract. Under this section the only provision for the plaintiff's obtaining the accounts on termination of the agreement is that plaintiff shall have the first chance to buy the accounts if, but only if, the defendant decides to sell them in one lot.

The last two paragraphs of Item 17 contain the only provision for the plaintiff receiving the benefits of any bonus sale. These paragraphs apply only if the defendant decides to sell the account in one lot and plaintiff elects to purchase the accounts in one lot, and the parties cannot agree upon the terms of the sale. In such event, if the defendant sells the account in one lot to some third party and obtains a premium, that is, a sum above the amount of principal and accrued interest due at the date of the sale, the plaintiff is entitled to receive one-half the premium, and if the plaintiff should himself purchase the accounts from the defendant at a premium, he is to obtain credit for one-half the premium amounts. These are the only instances in which premium payments or credits apply. At no place in the contract is it required, on termination of the agreement, to sell the accounts or the business in one lot or to refrain from doing business in Xenia, Ohio.

Paragraph 17 of the contract further provides that the

defendant may refuse to permit plaintiff to make any further loans on giving plaintiff three months written notice. Under such circumstances the plaintiff is obliged to collect all of outstanding loans and deposit the moneys in the bank making no further withdrawals. In lieu of the method just stated, however, the defendant **may, at its option,** take over the liquidation of all loans.

It is our opinion that the word "liquidation" as used in the contract means to take over for collection. The word "liquidate" was defined in the case of Fleckner v Bank, 8 Wheat. (U. S.) 338, as to pay; to settle; to adjust and gradually extinguish all indebtedness. All loans will be liquidated at some future time if the payments of interest and principal are made according to contract. These loans were small chattel loans and it would seem none of which were to run beyond the period of eighteen months. Since the plaintiff is neither a partner nor a joint owner of any of the property or assets of the defendant, he is not entitled to a receiver under §11894 GC.

It is true the defendant has breached the contract by failing to give the plaintiff required ninety days notice for the termination of the contract. For this breach there is an adequate remedy at law which the plaintiff must pursue as his only remedy. It hardly requires authority for the proposition that where the remedy at law is adequate, equity does not have and will not take jurisdiction of a case. The Supreme Court of Ohio in **The Salem Iron Company v Hyland, et al., 74 Oh St 160,** said:

"* * * The protection of rights in property is the purpose for which courts of equity most frequently exercise their jurisdiction, and it is with reference to the protection of such rights that the familiar rule is usually stated and applied, that equity will intervene only when legal remedies are inadequate."

Since there is an adequate remedy at law, the application for an injunction should also have been denied.

Judge Johnson in his opinion granting the relief prayed for said:

"It was argued by counsel for the defendant that the plaintiff was not entitled to any equitable relief for the reason that his damages, if any, could be determined on a money basis. However, it seems to the Court that if the plaintiff is deprived of the notice required under the contract and the defendant is permitted to take over all of the business of the plaintiff

and take away from him all of the customers that he now has coming into his place, the damages could not be determined in money, and he is entitled to equitable relief."

We feel that the learned Judge is in error when he refers to "all of the customers" as being those of the plaintiff. The plaintiff has conducted this business since the year 1939 as the agent for the defendant, and if this is true all of those customers are customers of the defendant and not of the plaintiff.

For the foregoing reasons it is our conclusion that the plaintiff has failed to allege facts showing a cause of action for a receivership or injunctive relief.

The order of the Common Pleas Court is reversed and case ordered remanded.

HORNBECK, P. J., concurs in judgment.
GEIGER, J. dissents.

GEIGER, J., dissenting:
I dissent for the following reasons—
The contract provides that the Party of the First Part may at any time refuse to permit the Party of the Second Part to make further loans or purchases, or purchase further discounts under the agreement, **upon giving said Party of the Second Part three months' written notice.**

It is alleged that said defendant has failed to give the three months' written notice as provided for in the contract, and also has failed to permit the plaintiff to conduct this business in an orderly and business-like manner for said period of three months, as provided by the contract.

The main controversy revolves around the provisions of Section 17 of said contract, to the effect that the Party of the First Part may at any time refuse to permit the Party of the Second Part to make further loans or purchases, or purchase further discounts under this agreement, **upon giving to said Party of the Second Part three months' written notice.**

The plaintiff prays that a receiver be appointed for the purpose of operating the business for the ninety-day period; that at the end of said period, said receiver proceed to liquidate said loan business in Greene County, and that a temporary injunction be allowed, and that a receiver be appointed to take possession of the property of the defendant; that the plaintiff's interest be protected and for other relief.

In substance, the defendant claims that the contract is simply a contract of agency, terminable at the will of the de-

fendant; that there is no equitable grounds for either appointing a receiver or granting an injunction.

I do not follow defendant's claim that the contract recites simply an agreement of agency terminable at the will of the defendant. All the way through the contract, there are interwoven provisions that seem to entitle the plaintiff to the protection of a court of equity.

The contract specifically provides that it shall not be terminated except upon three months' written notice, and that during that period, the plaintiff shall have certain valuable rights incidental to his interest in the business. It is possibly not proper to call it a partnership, but certainly the plaintiff, by virtue of the benefits conferred upon the defendant under the contract, has a right, during a limited period, of winding up the business to which he had contributed, not only through his former activities, but through the activities incidental to his operation under the provisions of the contract.

It is quite possible, under the provisions of the contract, that the plaintiff may have intermingled his own funds with those of the defendant in making certain loans and engaging in financial transactions in the name of the defendant, so that he may have a definite financial interest in the entire activity conducted within Greene County.

The Court below found that the motion for the appointment of a receiver and a restraining order are each well taken and sustains the same, making the said appointment to take charge of the business during a period of ninety days, and the Court grants a restraining order against the defendant from conducting their business in Greene County for a period of ninety days.

The plaintiff alleges that he has an interest equivalent to $9,000.00 in the loans and discounts made by him, which would indicate that he claims a substantial interest in the business other than that as an agent relying upon a commission for his compensation.

The plaintiff had a right to bring an equity proceeding and to apply for the appointment of a receiver and an injunction during the period of three months covered by the contract, which was designed to give the plaintiff an opportunity to secure from the business so established, his proper compensation. This right is different from the right to a money judgment and entitles the plaintiff to an equitable proceeding and to the appointment of a receiver, under §11894 GC, and under **Iron Co. v Hyland, 74 Oh St 160.**

I am of the opinion that the Court below did not err in the judgment rendered in this matter.